SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ELIZA CARMEN RODRIGUEZ, NYSB #5645379**
Assistant United States Attorney
Eliza.Carmen.Rodriguez@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-cr-00075-MO** |
| **v.** | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |
| **DONTE DARNELL RILEY,** | |
| **Defendant.** | |

Defendant Donte Darnell Riley is charged with kidnapping a fifteen-year-old girl from

Portland and transporting her to Vallejo, California where he forced her into prostitution. He faces

federal indictment on charges that carry a fifteen-year mandatory minimum. There is a rebuttable

presumption of detention in this matter. Riley is a danger to the community and should be detained

pending trial.

On March 17, 2026, defendant was detained in the Northern District of California by

Honorable Magistrate Judge Peter H. Kang following a detention hearing. He was remanded into

**Government's Detention Memorandum**                                                    **Page 1**

custody and ordered removed to the District of Oregon.[1] Defendant is not eligible for a second detention hearing in the District of Oregon barring new information.

## I.    LEGAL STANDARD

Pursuant to the Bail Reform Act of 1984, if, after a detention hearing the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall order* the detention of the person before trial." 18 U.S.C. § 3142(e)(1) (emphasis added). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The United States is permitted to proceed by proffer and to submit hearsay evidence with respect to issues of detention. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) (citing cases).

Riley is charged with numerous violent offenses with a minor victim, including Transportation with Intent to Engage in Criminal Sexual Activity), in violation of 18 U.S.C. § 2423(a), and Kidnapping, in violation of 18 U.S.C. § 1201(a)(1). These charges trigger a rebuttable presumption, stating that "it *shall* be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E) (emphasis added).

To rebut that presumption, defendant must produce "some evidence" that he is not a flight risk or a danger.  *See United States v. Clark*, 791 F. Supp. 259, 260 (E.D. Wa. 1992).  The presumption "is not erased when a defendant proffers evidence to rebut it; rather the presumption

---

[1] Defendant's Rule 5 proceedings are docketed in ND/Cal as 4:26-mj-70262

**Government's Detention Memorandum**                                                    **Page 2**

remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

## II.    FACTUAL BACKGROUND

### A.    Riley kidnapped MV from a hotel in Portland, Oregon

On September 2025, Minor Victim ("MV"), a fifteen-year-old child, ran from the custody of Oregon Department of Human Services (ODHS) in search of her biological mother. She went to a hotel in Portland, Oregon in an area known for commercial sex trafficking. When she arrived, she did not find her mother. She was instead approached by a man who asked if she had a man. When she said, "No," and told him she was fifteen, he lifted up his shirt, showed her a firearm, and told her to come to his room. That man was Donte Darnell Riley.

In Riley's room, MV was forced to smoke marijuana. A woman was also present in the room. She and Riley discussed passing MV off as 19 years old and she was told not to reveal her true age. While the woman took a shower, Riley sexually assaulted MV. He hit MV and gave her a bloody nose. The next day, another woman arrived and they left for California. MV and the two women took turns driving a car while Riley drove in tandem. MV tried to get pulled over for driving. Riley hit her for doing so.

### B.    Riley Transported MV to California for sex trafficking

Once they arrived in California, Riley brought MV clothes and informed her that she would be engaging in prostitution. When she refused, Riley told her she would do it or get shot in the head. Riley bought additional lingerie and another woman working for Riley gave MV the rules she

**Government's Detention Memorandum**                                **Page 3**

was expected to follow[2]: she would work 12 hours a day on the street, she would charge $120.00 to $200.00 per date, and the dates would last 30-45 minutes. She wasn't allowed to date anyone else, leave or do anything else without permission. MV made approximately $4,000.00 per day and gave all of that money to Riley.

MV was not allowed to communicate directly with Riley. One of the women taught her what hand signals to use to communicate while they were out on the street, kept track of her location and communicated with her on Riley's behalf. Riley provided MV and the women with hotel keys for a room where dates would take place. Riley provided MV with condoms and blue pills that made her feel high so that she could work longer. Riley kept the gun in the drawer next to him. He gave MV a cell phone that had previously belonged to one of the women. Riley went through the phone to make sure that she did not try to escape.

### C.    MV is recovered from Vallejo, California and identifies Riley

MV out to a relative and told them that she was being forced to sell sex in California. MV also told them that she had a pimp, and, if she tried to leave, he would beat her. The relative reached out to ODHS who contacted the Federal Bureau of Investigation (FBI). Law Enforcement was able to track down her location in Vallejo and recover her.[3] MV only knew her trafficker as "Tay." She only knew the women by their aliases. MV described that her trafficker had fake gold teeth that he removed at night and a few tattoos on his upper arm. MV had also taken a screenshot of her trafficker's Instagram account. FBI agents were able to connect that account to Riley. MV

---

[2] In the previously filed detention memo, it stated that Riley himself gave MV the rules rather than this woman.

[3] Previously, this recovery was attributed to the FBI.

**Government's Detention Memorandum**                                    **Page 4**

positively identified Riley from a photo recovered from her phone. FBI was also able to use investigative tools to uncover the identities of the women that were with Riley. MV positively identified that those individuals were the ones in California with her.

FBI agents continued their investigation. They uncovered reservation records that showed that one of the women had checked into the hotel in Portland. They were given surveillance footage that showed Riley and a woman getting into a Jeep and leaving the hotel on September 16, 2025.[4] Additionally, footage showed MV present at the hotel during that time.  Data from the phone MV used in California verified that she had been in Vallejo on September 18-19, 2025. FBI obtained warrants for Riley's social media accounts that revealed photos of MV in lingerie walking down the street with the caption, "New (snowflake emoji)." Those accounts also publicly documented that Riley was in Portland and California on the dates alleged by MV. They found messages where Riley discussed buying a Jeep in Portland September 8-9, 2025. The Jeep matched the one from the hotel surveillance footage.

FBI agents obtained search warrants for Riley's person, vehicles, and digital devices. He was encountered when he reported to probation on March 11, 2026. He was arrested pursuant to a complaint warrant out of the District of Oregon for violations of 18 U.S.C. § 1591 – Sex Trafficking of Minors, or by Force, Fraud, and Coercion; 18 U.S.C. § 2423(a) – Transportation of Minors with the Intent to Engage in Criminal Sexual Activity; and 18 U.S.C. § 1201 – Kidnapping. Defendant was apprehended in the Northern District of California and Rule 5 proceedings were held on March 12, 2026.  A detention hearing was held in the Northern District of California on

---

[4] Previously, it was stated that MV was also present in that footage. She was not.

**Government's Detention Memorandum**                                        **Page 5**

March 17, 2026. Defendant was detained.  Defendant was subsequently indicted in the District of Oregon on March 18, 2026.[5]

### D.    Riley's previous criminal history and resulting probation

Riley's criminal history shows that he has been involved in sex trafficking for years. He was charged with Pandering and Pimping in 2017, Supervising prostitution in 2018, Pimping in 2019, Enticing a minor for prostitution in 2020, Pimping in July and August of 2020, Pimping in 2022, and Pimping and Pandering in 2023 and 2024.

In April 2025, Riley was charged with human trafficking, false imprisonment, pandering, pimping and kidnapping. These charges arose when an employee, Adult Witness ("AW"), at an adolescent care facility called law enforcement and informed them that she received a call from a former client, Adult Victim 1 ("AV1") who told her that a man was trying to pimp her out of the Fairview Inn in San Leandro, California and would not take her home. Officers responded to the hotel and Riley was there with AV1. AV1 was interviewed and she reported that she had been contacted through social media by another woman who arranged for her to work for Riley. AV1 worked for Riley for two days in San Francisco, where she sold sex and gave him any money she made. Riley gave her drugs to help her stay up for work. AV1 wanted to leave, but Riley wouldn't let her. That is when she called AW. Riley slapped her on the face during the call. He was subsequently arrested, charged, and sentenced to 126 days in jail and two years of probation.

Riley began his probation in Alameda County on June 13, 2025. He remains on probation that is set to expire on October 15, 2027. His terms of probation prohibit using the internet to promote, reference, solicit, or engage in commercial sexual activity or human trafficking, to include

---

[5]  The 18 U.S.C. § 1591 charges were not indicted.

any language or imagery that creates the appearance of engaging in such behavior or activity; engaging in any criminal conduct; possessing or controlling any firearm; going within 300 yards of a hotel, motel, or inn unless registered under his true name; going near areas of prostitution, to include several specifically listed areas in the Bay Area; recruiting anyone to engage in acts of prostitution through any social media websites or phone applications; associating with any person known to him as a prostitute, pimp, trafficker, or purchaser of sexual services; associating with any minor without legal parent or guardian consent; and traveling more than 50 miles from his residence, or for more than 48 hours out of the State of California, without prior written approval.

> **E.    Riley's social media and location data shows continued involvement in sex trafficking**

In reviewing Riley's social media, FBI agents discovered evidence that Riley continues to be involved in sex trafficking offenses. Riley's social media includes photos of him with large amounts of cash, references to sex trafficking, a photo of the women, including the two who were with MV and Riley in California, in lingerie in a hotel room, images of women in lingerie walking down the street, and photos taken from his vehicle window of women who are on the street in locations known for sex trafficking. He also posts photos stating that he is in other states. Most recently, he was in Las Vegas, Nevada on March 5, 2026. While he was there, he posted photos of large amounts of cash and women in lingerie.

Agents have monitored Riley's movements through geolocation data. That data revealed that Riley is moving continuously between cities such as Reno, Nevada, and cities in the Bay Area.

///

///

**Government's Detention Memorandum**                                    **Page 7**

### III.    ARGUMENT

Riley's involvement in sex trafficking spans the better part of a decade. He has been charged with these offenses ten times since 2017. Based on his criminal history, MV is not the first victim that he has kidnapped nor is she the first minor that he has trafficked. Riley's latest trafficking charge from 2025 shows that he has escalated to kidnapping and falsely imprisoning victims.

Even more troubling, Riley committed this offense while he was on probation that was geared to curb his sex trafficking violations. He was banned from going to areas of prostitution, both physically and virtually. He had reporting requirements and had his travel restricted. Despite those conditions, he was able to travel to Oregon, kidnap a minor victim while armed, and force her into prostitution in California. His social media shows that he continues to travel around the Western United States and continue his trafficking exploits while on supervision.

No condition or combination of conditions can reasonably assure that the community is safe from this offender.  All four factors weigh in favor of Riley's detention.

First, the nature and circumstances of his offenses—the kidnapping, transportation for commercial sex, and sex trafficking of a minor—are among the gravest dangers a community can face.  Riley has proven that not even supervision can curb his sex trafficking violations. He has travelled to multiple states, openly posting evidence of his sex trafficking and photos of potential victims, all while fanning out cash and bragging about his exploits. He kidnapped a minor victim, beat her, and forced her into prostitution in another state – mere months after he was arrested and charged with doing the same to an adult victim. Although Riley was placed on supervision with reporting requirements and conditions specifically tailored to curb his sex trafficking crimes, he was undeterred. He has continued to openly commit suspected sex trafficking offenses as recently as last

**Government's Detention Memorandum**                                    **Page 8**

week. These actions demonstrate that truly no condition or combination of conditions can keep the community safe from Riley's sex trafficking offenses.

Second, the weight of the evidence against Riley is laden by victim testimony, his own social media posts, and digital evidence, including location data.

Third, Riley's character and history show a persistent dedication to committing sex trafficking offenses. Even after sustaining ten sex trafficking-related charges, multiple convictions, and being on sex trafficker-specific probation, he has continued to accrue victims and use drugs, physical abuse, threats, and weapons to keep them under his control. He is brazen, posting his travel and exploits on social media. As even the specific conditions of probation set for him could not stop his sex trafficking violations, there is a high risk that he could continue commit further crimes against future victims, including minors.

Finally, the nature and seriousness of the danger Riley presents is a direct echo of the first factor—the physical safety of victims.  His determination to continue this crime is shown by his criminal history and social media accounts.

The greatest risk is that Riley will continue to do what he has been doing for years, using physical force, drugs, and threats to traffic victims for sex on the West Coast. His ability to do that even while supervision makes that danger untenably hard for Pretrial Services to create and enforce conditions that will stop him from committing further sex trafficking offenses.

///

///

///

///

///

**Government's Detention Memorandum**                                                                 **Page 9**

## IV.    CONCLUSION

Given the significant danger to the community presented by the instant offense, the defendant's history of sex trafficking offenses for the past nine years, his demonstrated efforts and ability to commit those crimes even while on supervision, and the significant sentence he faces if convicted, the defendant presents an unacceptable danger to the community if released.

Dated: April 24, 2026                    Respectfully submitted,

                                         SCOTT E. BRADFORD
                                         United States Attorney

                                         /s/ Eliza Carmen Rodriguez
                                         ELIZA CARMEN RODRIGUEZ, NYSB #5645379
                                         Assistant United States Attorney